1
2
3
4

FRANKLIN D. AZAR & ASSOCIATES
Ivy Ngo, California SBN 249860
ngoi@fdazar.com
14426 East Evans Ave
Aurora, CO 80014
Telephone:   303/757-3300
Facsimile:   720/213-5131

5

6

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12
13
14
15
16
17
18

| | |
|---|---|
| CHARLES OLSON, AN INDIVIDUAL AND COLORADO RESIDENT, AND EILEEN M. PINKOWSKI, AN INDIVIDUAL AND COLORADO RESIDENT,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC. AND ALPHABET, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>(1) UCL - Unlawful Business Practice<br>(2) UCL - Unfair Business Practice<br>(3) UCL - Fraudulent/Deceptive Business Practice<br>(4) Negligence<br>(5) Invasion of Privacy<br>(6) Deceit by Concealment<br>(7) Breach of Implied Contract<br>(8) Violation of Colorado Consumer Protection Act<br>(9) Violation of Colorado Security Breach Notification Act |

19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

SUMMARY OF THE CASE........................................................................................ 4

JURISDICTION AND VENUE ............................................................................... 5

PARTIES ..................................................................................................................... 5

    A.    Plaintiffs ............................................................................................... 5

    B.    Defendants............................................................................................ 6

FACTUAL BACKGROUND ................................................................................... 6

    A.    Google Collects and Stores A Significant Amount of PPI from its Users, and Made Specific Representations Regarding its Protection of Users' PPI........................................................................... 6

    B.    PPI Is An Increasingly Valuable Commodity .................................. 7

    C.    Google Has A Long History of Improper Data Practices................ 8

    D.    Google's Inadequate Data Security Allowed for the Google+ Data Breach Which Was Intentionally Concealed from the Public .................................................................... 9

CLASS ACTION ALLEGATIONS ...................................................................... 13

CLAIMS ALLEGED ON BEHALF OF ALL CLASSES ................................. 18

First Claim for Relief Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq*.) ...................................................................... 18

Second Claim for Relief Violation of California's UCL – Unfair Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq*.)........................ 19

Third Claim for Relief Violation of California's UCL – Fraudulent/Deceptive Business Practice (Cal. Bus. & Prof. Code § 17200, et seq.) .................................................... 22

Fourth Claim of Relief Negligence........................................................ 23

Fifth Claim for Relief Invasion of Privacy ........................................... 25

Sixth Claim for Relief Deceit by Concealment (Cal. Civil Code §§ 1709, 1710) .......................... 26

Seventh Claim for Relief Breach of Implied Contract ........................ 27

ADDITIONAL CLAIMS ON BEHALF OF THE COLORADO SUB-CLASS ONLY ................... 28

Eighth Claim for Relief Violation of Colorado Consumer Protection Act  (Colo. Rev. Stat 6-1-101, *et seq*.) ........................................................................... 28

**Ninth Claim for Relief Violation of Colorado Security Breach Notification Act (Colo. Rev. Stat 6-1-716, et seq.)** .................................................................................................. **31**

**PRAYER FOR RELIEF** ................................................................................................ **32**

**JURY TRIAL DEMANDED** .......................................................................................... **32**

CLASS ACTION COMPLAINT

For the Class Action Complaint, Plaintiffs Charles Olson and Eileen M. Pinkowski ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendants Google, Inc. ("Google") and Alphabet, Inc. ("Alphabet") (collectively "Defendants"), based on personal knowledge as to Plaintiffs and Plaintiffs' own acts and on information and belief as to all other matters based upon, inter alia, the investigation conducted by and through Plaintiffs' undersigned counsel:

## SUMMARY OF THE CASE

1.     This case involves the data breach Google and Alphabet knew about for months before announcing on October 8, 2018 that the personal information of up to 500,000 users was exposed due to a software glitch that gave third-party application developers access to private Google+ profile data between 2015 and March 2018 ("Google+ Users" or "Users").

2.     In June 2011, Google launched, Google+ (or Google Plus), a social network owned and operated by Google for consumers with Google accounts.  Google+ replaced Google's previous social network effort, Google Buzz, after the platform faced lawsuits and an action by the Federal Trade Commission ("FTC") concerning users' numerous privacy concerns with the platform, including alleged misrepresentations regarding Google's privacy assurances to users.  Like other social media platforms such as Facebook or Twitter, Google+ facilitates the sharing of information, photographs, weblinks, conversations, and other shared content between Users.

3.     Google maintains a privacy policy that makes specific representations to its users regarding its affirmative duty to protect users' personal information, specifically providing that users are in control of who has access to their personal information ("Google Privacy Policy").  When a User adds a contact to his or her Google+ account, the User assigns that person to one or more "circles" in order to categorize or organize the contact.  Google+ Users determine privacy settings for content, allowing content to be shared with the public or with only those in designated circles.

4.     As part of the sign-up process and as a consequence of interacting with their social network, Google+ Users create, maintain, and update profiles containing significate amounts of Personal Information, including their names, birthdates, hometowns, addresses, locations, interests, relationships, email addresses, photos, and videos, amongst others, referred to herein as "PPI."

5.     While PPI was supposed to be protected and shared only with expressed permissions and limitations, Defendants allowed third-party application developers to improperly collect the Personal Information of up to 500,000 Google+ users ("Google+ Data Breach").

6.     And instead of choosing to be transparent about the Google+ Data Breach, Defendants explicitly chose to conceal it from the public until after the public outcry following Facebook's widely publicized Cambridge Analytica scandal had exhausted – hoping to avoid both public and Congressional scrutiny.

7.     This Class Action Complaint is filed on behalf of all persons in the United States, described more fully *infra*, whose PPI was compromised in the Google+ Data Breach.

## JURISDICTION AND VENUE

8.     This court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state from Defendants and is a citizen of a foreign state. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper under 28 U.S.C. § 1391(c) because Defendants Google and Alphabet are corporations that do business in and are subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Defendants' governance and management personnel that led to the breach. Further, Google's terms of service governing users in the United States provides for venue in the Northern District of California for all claims arising out of Plaintiffs' relationship with Google.

## PARTIES

### A.     Plaintiffs

10.     Plaintiff Charles Olson ("Olson") is a resident and citizen of Colorado. Plaintiff Olson opened a Google+ account and used it for at least four years, including with third-party applications. Plaintiff Olson also uses a Gmail account for his primary email. Through the opening and

use of these accounts, Plaintiff Olson has entrusted Google with his Personal Information for all relevant time periods.

11.     Plaintiff Eileen M. Pinkowski ("Pinkowski") is a resident and citizen of Colorado.  Plaintiff Pinkowski opened a Google+ account and used it since the inception of the program, including with third-party applications.  Plaintiff Pinkowski also uses a Gmail account for her primary email. Through the opening and use of these accounts, Plaintiff Pinkowski has entrusted Google with her Personal Information for all relevant time periods.

**B.     Defendants**

12.     Defendant Google, Inc. ("Google") is a Delaware corporation with its principal headquarters in Mountain View, California.

13.     Defendant Alphabet, Inc. ("Alphabet") is a Delaware corporation with its principal headquarters in Mountain View, California.  Alphabet is a public holding company formed in a corporate reorganization by Google.  Through the corporate restructuring, Defendant Google is now a direct, wholly owned subsidiary of Defendant Alphabet.[1]

14.     At all relevant times, Defendants were and are engaged in business in San Mateo County and throughout the United States of America.

## FACTUAL BACKGROUND

**A.     Google Collects and Stores A Significant Amount of PPI from its Users, and Made Specific Representations Regarding its Protection of Users' PPI**

15.     Google's Terms of Service make clear that it collects personal information from Users.

16.     However, at all relevant times, Google has maintained a Privacy Policy that makes specific representations to Users regarding its protection and exposure of their personal information.[2]

---

[1] Google, Inc., *Form 8-K* filed with the U.S. Securities and Exchange Commission ("SEC") on August 10, 2015, https://www.sec.gov/Archives/edgar/data/1288776/000128877615000039/a20150810form8-k.htm (last visited October 8, 2018).
[2] Google, *Privacy Policy* (May 25, 2018), *available at* https://policies.google.com/privacy (last visited October 15, 2018).

CLASS ACTION COMPLAINT

17.     The Google Privacy Policy specifically advises Users that: "When you use our services, you're ***trusting us*** with your information.  We understand this is a ***big responsibility*** and work hard to protect your information and put you in control."[3]  The Google Privacy Policy further states that: "We'll share Personal Information outside of Google ***when we have your consent***."[4]

18.     Other specific representations to Users in the Google Privacy Policy include:

a.      "You have choices regarding the information we collect and how it's used;"

b.      "We'll ask for your consent before using your information or a purpose that isn't covered in this Privacy Policy;" and

c.      "We'll ask for your explicit consent to share any sensitive Personal Information."[5]

19.     Perhaps most importantly, Google represents to Users in its Privacy Policy that they can "[c]ontrol whom you share information with through your account on Google+."[6]

**B.      PPI Is An Increasingly Valuable Commodity**

20.     Personal Information from social media, like the PPI encompassed in the Google+ Data Breach, is incredibly valuable to companies like Google.  In 2017 alone, Google's ad revenue – which is dependent on Google's ability to collect personal information about its users, including PPI – amounted to nearly ***$95.4 billion***.[7]

21.     One study found that an average consumer in the U.S. can make $240 per year monetizing their data for digital advertising.[8]  Another study in 2018 found that social media advertising revenue currently amounts to $67.97 billion, and the average revenue per Internet user currently amounts to

---

[3] *Id* (emphasis added).
[4] *Id* (emphasis added).
[5] *Id*.
[6] *Id*.
[7] Alphabet, *Form 10-K* for the fiscal year ended December 31, 2017, filed with the SEC on February 6, 2018, at 28.
[8] "How Much is Your Data Worth? At Least $240 per Year. Likely Much More," Medium. *Available at* https://medium.com/wibson/how-much-is-your-data-worth-at-least-240-per-year-likely-much-more-984e250c2ffa (last visited October 15, 2018).

approximately $22.84 per user.[9]  Similarly, a 2016 study found that Google makes approximately $7.00 per monthly active user each quarter, or approximately $28.00 per user each year.[10]

22.    Additionally, the types of personal information compromised in the Google+ Data Breach are highly valuable to identity thieves. The names, birthdates, hometowns, addresses, locations, interests, relationships, email addresses, photos, and videos, and other valuable PII can all be used to gain access to a variety of existing accounts and websites.

23.    A 2013 Norton report – based on one of the largest consumer cybercrime studies ever conducted – estimated that the global price tag of cybercrime was around $113 billion at that time, with the average cost per victim being $298 dollars.[11]

24.    The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the PII they have obtained. Indeed, in order to protect themselves, Class members will need to remain vigilant against unauthorized data use for years and decades to come.

### C.    Google Has A Long History of Improper Data Practices

25.    Google has been on notice of deficiencies regarding its policies involving the retention of User data since 2010.

26.    As a result of such deficiencies, Google agreed to a proposed settlement in March 2011 which contained a consent decree after the FTC found that Google used deceptive tactics and violated its own privacy promises to consumers when it launched its first social network product, Google Buzz, in 2010.[12]  Under the settlement, the FTC barred Google from misrepresenting the privacy of personal information or the extent to which consumers may exercise control over the collection, use, or exposure of covered personal information. The FTC also required Google to establish a "comprehensive privacy

---

[9] "Social Media Advertising." Statista. *Available at* https://www.statista.com/outlook/220/100/social-media-advertising/worldwide#market-revenuePerInternetUser (last visited October 15, 2018).
[10] "Facebook Closes the Gap on Google." Ampere Analysis.  *Available at  https://www.ampereanalysis.com/blog/fd5b6dc9-d76e-40a8-b8f2-e5ed15bc32bb* (last visited October 15, 2018).
[11] 2013 Norton Report. *Available at* https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf (last visited October 15, 2018).
[12] U.S. FTC. *In the Matter of GOOGLE INC.*, a corporation. Docket No. C-4436. https://www.ftc.gov/sites/default/files/documents/cases/2011/10/111024googlebuzzdo.pdf

program that is reasonably designed to: (1) address privacy risks related to the development and management of new and existing products and services for consumers, and (2) protect the privacy and confidentiality of covered information."  Included in this privacy program was the "regular testing or monitoring of the effectiveness of those privacy controls and procedures," which would be audited by an independent third-party professional.[13]

27.    Less than a year after entering into the FTC consent decree, Google violated it – becoming one of the rare companies in the country that has violated a FTC consent decree – and paid a record fine for its circumvention of privacy protections in the web browser Safari.[14]   In discussing the settlement, Jon Leibowitz, Chairman of the FTC, said, "The record setting penalty in this matter sends a clear message to all companies under an FTC privacy order.  No matter how big or small, all companies must abide by FTC orders against them and keep their privacy promises to consumers, or they will end up paying many times what it would have cost to comply in the first place."[15]

**D.    Google's Inadequate Data Security Allowed for the Google+ Data Breach Which Was Intentionally Concealed from the Public**

28.    On October 8, 2018, Alphabet announced that it would be permanently shutting down the consumer functionality of Google+.[16]   Within this announcement, Google disclosed that it had discovered a vulnerability associated with its social network product, Google+.[17]

29.    According to Google, when developers used a certain Application Programming Interface ("API") for their application, that API exposed non-public personal profile information – including name, email address, occupation, and age of Users – to the developers and anyone who the developers exposed such personal information to through their application.   Google represented that this vulnerability could have potentially affected up to half a million Google users from 2015 and May 2018.

---

[13] *Id.*
[14] "Google Will Pay $22.5 Million to Settle FTC Charges It Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser." FTC, August 9, 2012. *Available at* https://www.ftc.gov/news-events/press-releases/2012/08/google-will-pay-225-million-settle-ftc-charges-it-misrepresented (last visited October 15, 2018).
[15] *Id.*
[16] Google. "Project Strobe: Protecting your data, improving our third-party APIs, and sunsetting consumer Google+." Google Blog. October 08, 2018. *Available at* https://www.blog.google/technology/safety-security/project-strobe/ (last visited October 15, 2018).
[17] *Id.*

30.     In sum, the Google+ Data Breach, like Facebook's Cambridge Analytica scandal, made it possible for third-parties to access private information about Users who never had an opportunity to consent.  In practice, the Google+ Data Breach occurred as follows:

a.      Google+ User 1 ("User 1") is friends with Google+ User 2 ("User 2");

b.      User 1 shares PPI with her friends, including User 2;

c.      User 2 decides to connect to a third-party application through Google+;

d       User 2 is prompted to give that application access to his own personal data, and he consents to providing it;

e.      Because of the Google+ Data Breach, the third-party application was also improperly granted access to all the details—including ones not marked public—that User 1 had only given consent to be shared with User 2.

31.     According to Google's blog post disclosing the Google+ Data Breach, up to 438 applications made by third-parties may have had access to Users PPI due to Google's vulnerability.[18]

32.     Although Google claimed in its blog post that it "found no evidence that any developer was aware of this bug, or abusing the API" or "that any Profile data was misused," Google also noted that it only kept logs for two weeks.[19]  Thus, based on Google's own admission that it can only account for whether the vulnerability had been exploited in the two weeks preceding its discovery, it has insufficient records to confirm whether a data breach occurred.  As such, the full extent of the damage caused by Google's failure to provide adequate controls and protection to Users may never be known.  Accordingly, the number of impacted Users as well as the third-party applications that may have been able to exploit the vulnerability to access Users' PPI may have been significantly more than what Google's disclosed – 500,000 Users and 438 third-party applications.

33.     Equally troubling to the widespread and unknown impact of the Google+ Data Breach is Google's intentional effort, approved by its upper management, to conceal the breach from the public and its victims.

---

[18] *Id.*
[19] *Id.*

CLASS ACTION COMPLAINT

34.     According to the Wall Street Journal, a Google internal memorandum prepared by its legal and policy staff and shared with senior executives revealed that Google hid the issue for six months to avoid public scrutiny about its privacy practices.[20]   According to that internal memorandum, Google's decision not to disclose its vulnerability was motivated by the fear that doing so would draw "immediate regulatory interest," bring Google "into the spotlight alongside or even instead of Facebook despite having stayed under the radar throughout the Cambridge Analytica scandal," and "almost [guarantee that] Sundar [Pichai, Chief Executive Officer of Google,] will testify before Congress."[21]

35.     Google's failure to adequately disclose the Google+ vulnerability for months on end has made the regulatory and congressional interest in the data breach even greater than if Google had simply disclosed it when it occurred.   The Google+ Data Breach has led directly to recent Congressional calls for investigation, including questions regarding Google's compliance with the aforementioned FTC consent decree's requirements with respect to privacy settings and the protection of private information.[22]

36.     An October 11, 2018 letter to Google CEO Sundar Pichai from Commerce Committee Chairman John Thune (R., S.D.) detailed Google's culture of concealment and opacity, noting that:

> At the same time that Facebook was learning the important lesson that tech firms must be forthright with the public about privacy issues, Google apparently elected to withhold information about a relevant vulnerability for fear of public scrutiny. We are especially disappointed given that Google's chief privacy officer testified before the Senate Commerce Committee on the issue of privacy on September 26, 2018—just two weeks ago—and did

---

[20] MacMillan, Douglas, and Robert McMillan. "Google Exposed User Data, Feared Repercussions of Disclosing to Public." The Wall Street Journal. October 08, 2018. *Available at* https://www.wsj.com/articles/google-exposed-user-data-feared-repercussions-of-disclosing-to-public-1539017194 (last visited October 15, 2018).
[21] *Id.*
[22] *See* Senator Blumenthal's Letter to FTC Chairman, October 10, 2018, *available at* https://www.blumenthal.senate.gov/imo/media/doc/10.10.18%20-%20FTC%20-%20Google%20Plus%20Exposure.pdf; Senator Thune's Letter to Sundar Pichai, October 11, 2018, *available at* https://www.commerce.senate.gov/public/_cache/files/4852b311-0953-4ac8-ac43-a91dde229cc1/E300DA0C7659678AE0AE37AEB9746200.thune-wicker-moran-letter-to-google-10.11.18.pdf; and Senator Grassley's Letter to Sundar Pichai, October 11, 2018, *available at* https://www.judiciary.senate.gov/imo/media/doc/2018-10-11%20CEG%20to%20Google%20-%20Data%20Privacy.pdf.

CLASS ACTION COMPLAINT

1  | not take the opportunity to provide information regarding this very relevant
2  | issue to the Committee.[23]

3      37.     In addition, an October 11, 2018 letter to Pichai from Senate Judiciary Committee

4  Chairman Chuck Grassley not only detailed the obvious similarities between the Google+ Data Breach

5  and Facebook's widely publicized Cambridge Analytica scandal which should have put Google on

6  notice of the gravity of data breaches, but also reprimanded Google for its refusal to participate in past

7  hearings on data breaches, despite its concealed knowledge of the Google+ Data Breach:

> In March of this year, data privacy and social media was in the spotlight thanks to events surrounding Facebook and Cambridge Analytica. I convened a hearing with the CEO of Facebook on April 10, 2018, and according to his testimony, a feature in Facebook's application programming interface, or API, allowed third party developers to pull information not just from users of an application, but also that user's friends, even if the friend had made their information private. […]
>
> At the time, I invited you and the CEO of Twitter to participate in the hearing to discuss the future of data privacy in the social media industry. […] Your office, however, declined to come before Congress and the American people, asserting that the problems surrounding Facebook and Cambridge Analytica did not involve Google.
>
> Given your and Google's unwillingness to participate. I sent you a letter seeking information on Google's current data privacy policies, specifically as they relate to Google's third party developer APIs. Your responses to my questions highlighted Google's application verification process, the continuous, monitoring of applications through machine learning, and the use of manual audits, all to ensure robust protection of user data.
>
> **Despite your contention that Google did not have the same data protection failures as Facebook, it appears from recent reports that Google+ had an almost identical feature to Facebook, which allowed third party developers to access information from users as well as private information of those users' connections. Moreover, it appears that you were aware of this issue at the time I invited you to**

[23] Senator Thune's Letter to Sundar Pichai. October 11, 2018. *Available at* https://www.commerce.senate.gov/public/_cache/files/4852b311-0953-4ac8-ac43-a91dde229cc1/E300DA0C7659678AE0AE37AEB9746200.thune-wicker-moran-letter-to-google-10.11.18.pdf.

**participate in the hearing and sent you the letter regarding Google's policies.**[24]

38.     The Google+ Data Breach has caused significant harm to Plaintiffs and other Class Members by allowing third-parties to access their PPI without their consent.  This harm was exacerbated by Google's culture of concealment and opacity regarding its insufficient data protection policies and resulting data breach.

39.     Despite numerous lapses in its approach to data security, Google still lacks sufficient safeguards and protections for Users' PII, and has shown a conscious disregard for any transparency regarding the potential exposure of this personal information.  Thus, this personal information remains at risk today and into the future, until Google is compelled to secure its User's PII.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following Classes and Sub-Classes:

>     **Nationwide Class**:   All persons who registered for Google+ accounts in the United States and whose PPI was accessed, compromised, or obtained from Google by third party applications without authorization or in excess of authorization as a result of the Google+ Data Breach.

>     **Colorado Sub-Class**: All persons who registered for Google+ accounts in Colorado and whose PPI was accessed, compromised, or obtained from Google by third party applications without authorization or in excess of authorization as a result of the Google+ Data Breach.

41.     Excluded from the Classes and Sub-Classes are Defendants and any entities in which Defendants or their subsidiaries or affiliates have a controlling interest, as well as Defendants' officers, agents, and employees.  Also excluded from the Class and Sub-Classes are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate family.

---

[24] Senator Grassley's Letter to Sundar Pichai. October 11, 2018. *Available at*
https://www.judiciary.senate.gov/imo/media/doc/2018-10-11%20CEG%20to%20Google%20-%20Data%20Privacy.pdf
(emphasis added).

Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that any definitions should be expanded or otherwise modified.

42.    **Numerosity:** The members of each Class and Sub-Class are so numerous that joinder of all members of every Class and Sub-Class would be impracticable.  Plaintiffs reasonably believe that Class and Sub-Class members number hundreds of thousands of people or more in the aggregate and well over 1,000 in the smallest of the classes.  The names and addresses of Class and Sub-Class members are identifiable through documents maintained by Defendants.

43.    **Commonality and Predominance**: This action involves common questions of law or fact, which predominate over any questions affecting individual Class and Sub-Class members, including:

a.    Whether Defendants represented that Google would safeguard Plaintiffs' and Class members' PPI;

b.    Whether Defendants owed a legal duty to Plaintiffs and Class members to exercise due care in collecting, storing, and safeguarding their PPI;

c.    Whether Defendants breached a legal duty to Plaintiffs and Class members to exercise due care in collecting, storing, and safeguarding their PPI;

d.    Whether third parties improperly obtained Plaintiffs' and Class members' PPI without authorization or in excess of any authorization;

e.    Whether Defendants were aware of third parties' collection of Plaintiffs' and Class members' PPI without authorization or in excess of any authorization;

f.    Whether Defendants knew about the Google+ Data Breach before they announced it to the public;

g.    Whether Defendants failed to timely notify victims and the public of the Google+ Data Breach;

h.    Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq*.;

i.    Whether Defendants' conduct violated the Colorado Consumer Protection Act, Colo Rev. Stat. 6-1-101, *et seq*.;

j.     Whether Defendants' conduct violated the Colorado Security Breach Notification Act, Colo Rev. Stat. 6-1-716, *et seq*.;

k.     Whether Defendants' conduct violated § 5 of the FTC Act, 15 U.S.C. § 45, *et seq*.;

l.      Whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

m.    Whether Plaintiffs and Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

44.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the members of the Class and Sub-Classes.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

45.     As further indication of the common questions of law, Google's terms of service provides that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."

46.     **Typicality:** Plaintiffs' claims are typical of the claims of the other members of their respective classes because, among other things, Plaintiffs and Class and Sub-Class members were injured through the substantially uniform misconduct by Defendants.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class and Sub-Class members, and there are no defenses that are unique to Plaintiffs.  The claims of Plaintiffs and those of other Class and Sub-Class members arise from the same operative facts and are based on the same legal theories.

47.     **Adequacy of Representation**: Plaintiffs are adequate representatives of the Class and Sub-Classes because their interests do not conflict with the interests of the other Class and Sub-Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they will prosecute this action vigorously.  Class and Sub-Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

48.   **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other Class and Sub-Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class and Sub-Class members to individually seek redress for Defendants' wrongful conduct. Even if Class and Sub-Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

49.   Further, Defendants have acted or refused to act on grounds generally applicable to the Class and Sub-Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class and Sub-Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

50.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.    Whether Class members' PPI was improperly obtained by third parties;

b.    Whether (and when) Defendants knew about any security vulnerabilities that led to the Google+ Data Breach before they were announced to victims and the public

c.    Whether Defendants failed to timely notify victims and the public of security vulnerabilities and the Google+ Data Breach;

d.    Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.;*

e.    Whether Defendants' representations that Google would secure and protect the Personal Information of Plaintiffs and members of the Class and Sub-Class were facts that

reasonable persons could be expected to rely upon when deciding whether to use Google+;

f.     Whether Defendants misrepresented the safety of Google's many systems and services, specifically the security thereof, and its ability to safely store Plaintiffs' and Class and Sub-Class members' Personal Information;

g.     Whether Defendants concealed crucial information about Google's inadequate data security measures from Plaintiffs, the Class, and Sub-Class;

h.     Whether Defendants failed to comply with Google's own policies and applicable laws, regulations, and industry standards relating to data security;

i.     Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiffs' and Class members' Personal Information secure and/or prevent the loss or misuse of that information;

j.     Whether Defendants failed to implement and maintain reasonable security procedures and practices for Plaintiffs' and other Class members' PPI in violation of subdivision (b) and § 5 of the FTC Act;

k.     Whether Defendants' conduct violated the Colorado Consumer Protection Act;

l.     Whether Defendants' conduct violated the Colorado Security Breach Notification Act;

m.     Whether Defendants owed a duty to Plaintiffs and Class members to safeguard their Personal Information and to implement adequate data security measures;

n.     Whether Defendants breached that duty;

o.     Whether such representations were false with regard to storing and safeguarding Plaintiffs' and Class members' PPI; and

p.     Whether such representations were material with regard to storing and safeguarding Plaintiffs' and Class members' PPI.

CLASS ACTION COMPLAINT

1
2
3

## CLAIMS ALLEGED ON BEHALF OF ALL CLASSES
### First Claim for Relief
### Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

4
5

51.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

6
7
8

52.    Google's terms of service provide that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."

9
10
11

53.    By reason of the conduct alleged herein, Defendants engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

12
13
14

54.    Google represented that it would not disclose Google+ users' PPI without consent and/or notice. Google further represented that it would utilize sufficient data security protocols and mechanisms to protect Google+ Users' PPI.

15
16

55.    Defendants failed to abide by these representations. Defendants did not prevent improper exposure of Plaintiffs' and Class members' PPI.

17
18
19
20
21
22

56.    Defendants stored the PPI of Plaintiffs and other Class members in Google's electronic and consumer information databases. Defendants falsely represented to Plaintiffs and other Class members that Google's PPI databases were secure and that their PPI would remain private.  Defendants knew or should have known Google did not employ reasonable, industry standard, and appropriate security measures that complied "with federal regulations" and that would have kept Plaintiffs' and the other Class members' PPI secure and prevented the loss or misuse of their PPI.

23
24
25
26
27
28

57.    Even without these misrepresentations, Plaintiffs and other Class members were entitled to assume, and did assume Defendants would take appropriate measures to keep their PPI safe. Defendants did not disclose at any time that Plaintiffs' PPI was accessible to third party application vendors because Defendants' data security measures were inadequate, and Defendants were the only ones in possession of that material information, which they had a duty to disclose. Defendants violated

the UCL by misrepresenting, both by affirmative conduct and by omission, the security of Google's many systems and services, and its ability to honor the exposure authorizations established by Plaintiffs and other Class members for their PPI.

58.     Defendants also violated the UCL by failing to implement reasonable and appropriate security measures or follow industry standards for data security, and failing to comply with Google's own posted privacy policies.  If Defendants had complied with these legal requirements, Plaintiffs and other Class members would not have suffered the damages described herein.

59.     Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Cal. Civ. Code § 1798.81.5(b), § 5(a) of the FTC Act, 15 U.S.C. § 45(a), Cal. Bus. & Prof. Code § 22576 (as a result of Google failing to comply with its own posted privacy policies).

60.     Plaintiffs and other Class members suffered injury in fact and lost money or property as the result of Defendants' unlawful business practices.  In particular, Plaintiffs' and other Class members' PPI was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that information is of tangible value.

61.     As a result of Defendants' unlawful business practices, which are violations of the UCL, Plaintiffs and the Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

### Second Claim for Relief
### Violation of California's UCL – Unfair Business Practice
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

62.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

63.     Google's terms of service provide that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."

64.      By reason of the conduct alleged herein, Defendants engaging in unfair "business practices" within the meaning of the UCL.

65.     Defendants stored the PPI of Plaintiffs and other Class members in Google's electronic and consumer information databases. Defendants represented to Plaintiffs and other Class members that Google's PPI databases were secure and that their PPI would remain private and be exposed only with expressed authorization. Defendants engaged in unfair acts and business practices by representing that Google would require expressed consent and authorization prior to exposure PPI to third parties.

66.     Even without these misrepresentations, Plaintiffs and other Class members were entitled to, and did, assume Defendants would take appropriate measures to keep their PPI safe. Defendants did not disclose at any time that Plaintiffs' and other Class members' PPI was vulnerable to unauthorized exposure because Google's data security measures were inadequate, and Defendants were in sole possession of that material information, which they had a duty to disclose.

67.     Defendants knew or should have known Google did not employ reasonable measures that would have kept Plaintiffs' and other Class members' PPI secure from unauthorized exposure.

68.     Defendants engaged in unfair acts and business practices by representing that Google would not expose Plaintiffs' and other Class members' PPI without authorization, and/or by obtaining that PPI without authorization. Defendants also violated Google's commitment to maintain the confidentiality and security of the PPI of Plaintiffs and other Class members, and failed to comply with Google's own policies and applicable laws, regulations, and industry standards relating to data security.

69.     Defendants engaged in unfair business practices under the "balancing test" because the harm caused by their actions and omissions, as described in detail *supra*, greatly outweigh any perceived utility. Indeed, Defendants' failure to follow basic data security protocols and misrepresentations to consumers about Google's data security cannot be said to have had any utility at all.

70.     Defendants engaged in unfair business practices under the "tethering test" because their actions and omissions, as described in detail *supra*, violated fundamental public policies expressed by the California Legislature. *See, e.g.,* Cal. Civ. Code § 1798.1 ("The Legislature declares that ... all individuals have a right of privacy in information pertaining to them.... The increasing use of computers ... has greatly magnified the potential risk to individual privacy that can occur from the maintenance of

Personal Information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that Personal Information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern.")   Defendants' acts and omissions, and the injuries caused by them, are thus "comparable to or the same as a violation of the law ..." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187.

71.   Defendants engaged in unfair business practices under the "FTC test" because the harm caused by their actions and omissions, as described in detail *supra*, is substantial in that it affects approximately 500,000 Class members and has caused those persons to suffer actual harms.  Such harms include a substantial risk of identity theft, exposure of Class members' PPI to third parties without their consent, diminution in value of their PPI, consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.  This harm continues given the fact that Class members' PPI remains in Defendants' possession, without adequate protection, and is also in the hands of those who obtained it without their consent.  Defendants' actions and omissions violated, *inter alia*, § 5(a) of the FTC Act, 15 U.S.C. § 45. *See, e.g., F.T.C. v. Wyndham Worldwide Corp.,* 10 F. Supp. 3d 602, 613 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015); *In re LabMD, Inc.*, FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to employ reasonable and appropriate measures to secure Personal Information collected violated § 5(a) of FTC Act); *In re BJ's Wholesale Club, Inc.*, FTC Docket No. C-4148, FTC File No. 042-3160 (Sept. 20, 2005) (same); *In re CardSystems Solutions, Inc.*, FTC Docket No. C-4168, FTC File No. 052-3148 (Sept. 5, 2006) (same); *see also United States v. ChoicePoint, Inc.*, Civil Action No. 1:06-cv-0198-JTC (N.D. Ga. Oct. 14, 2009) ("failure to establish and implement, and thereafter maintain, a comprehensive information security program that is reasonably designed to protect the security. confidentiality, and integrity of Personal Information collected from or about consumers" violates § 5(a) of FTC Act); 15 U.S.C. § 45(n) (defining "unfair acts or practices" as those that "cause[] or [are] likely to cause substantial injury to consumers which [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.").

72.     Plaintiffs and other Class members suffered injury in fact and lost money or property as the result of Defendants' unfair business practices.  In addition, their PPI was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

73.     As a result of Defendants' unfair business practices, which are violations of the UCL, Plaintiffs and other Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

<b><u>Third Claim for Relief</u></b><br>
<b>Violation of California's UCL – Fraudulent/Deceptive Business Practice</b><br>
<b>(Cal. Bus. & Prof. Code § 17200, <i>et seq.</i>)</b>

74.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

75.     Google engaged in fraudulent and deceptive acts and practices with regard to the services it provided to the Class by representing and advertising that (1) it would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PII from unauthorized disclosure, release, data breaches, and theft and that (2) it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Class Members' PII. These representations were likely to deceive members of the public, including Plaintiff and the Class Members, into believing their PII was securely stored – when it was not – and that Facebook was complying with relevant law – when it was not.

76.     Google engaged in fraudulent and deceptive acts and practices with regard to the services provided to the Class by omitting, suppressing, and concealing the material fact that the privacy and security protections for Class Members' PII was woefully inadequate. At the time that Class members were using Google's services, Google failed to disclose to Class Members that its data security systems failed to meet legal and industry standards for the protection of their PII. These representations likely deceived members of the public, including Plaintiffs and the Class, into believing that their PII was securely stored – when it was not – and that Google was complying with relevant law and industry standards – when it was not.

77.     As a direct and proximate result of Google's deceptive practices and acts, Plaintiffs and the Class were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their PII, and additional losses described above.

78.     Google knew or should have known that its computer systems and data security practices were inadequately safeguarding Class Members' PII and that the risk of a data breach or theft was very high.

79.     Google's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

80.     Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq., including, but not limited to, restitution to Plaintiffs and the Class of money or property that Google may have acquired by means of its fraudulent and deceptive business practices, restitutionary disgorgement of all profits accruing to Google because of its fraudulent and deceptive business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## Fourth Claim of Relief
### Negligence

81.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

82.     Defendants owed a duty to Plaintiffs and other Class members to exercise reasonable care in safeguarding and protecting their PPI and keeping it from being compromised, lost, stolen, misused, and/or exposed to unauthorized parties.

83.     Defendants knew that the PPI of Plaintiffs and other Class members was personal and sensitive information that is valuable to identity thieves and other criminals. Defendants also knew of the serious harms that could happen if the PPI of Plaintiffs and other Class members was wrongfully exposed, that exposure was not fixed, or they were not told about the exposure in a timely manner.

84.     By entrusting Defendants to safeguard their PII, Plaintiffs and other Class members had a special relationship with Defendants. Plaintiffs and other Class members signed up for Google's

services and agreed to provide their PII with the understanding that Google would take appropriate measures to protect it, and would inform them of any breaches or other security concerns that might call for action by Plaintiffs and other Class members.  But Defendants did not.  Defendants not only knew Google's data security was inadequate, they also knew Google did not have the tools to detect and document intrusions or exfiltration of PPI.  Defendants are morally culpable, given its repeated security breaches, wholly inadequate safeguards, and refusal to notify Plaintiffs and other Class members of data breaches or security vulnerabilities.

85.     Defendants breached their duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and other Class members' PPI by failing to adopt, implement, and maintain adequate security measures to safeguard that information and prevent unauthorized exposure of that PPI.

86.     Defendants also breached their duty to timely disclose that Plaintiffs' and other class members' PPI had been, or was reasonably believed to have been, improperly exposed.

87.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiffs and other Class members, their PPI would not have been compromised, stolen, and viewed by unauthorized persons.

88.     Defendants' negligence was a direct and legal cause of the theft of the PPI of Plaintiffs and other Class members and all resulting damages.

89.     The injury and harm suffered by Plaintiffs and other Class members was the reasonably foreseeable result of Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and other class members' PPI.  Defendants knew Google's systems and technologies for processing and securing the PPI of Plaintiffs and other Class members had numerous security vulnerabilities.

90.     As a result of this misconduct by Defendants, the Personal Information of Plaintiffs and other Class members was compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PPI was exposed to third parties without their consent.

**Fifth Claim for Relief**
**Invasion of Privacy**

91.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

92.     Google's terms and conditions designate California law as the sole applicable law governing the relationship between Google and its users.

93.     The California Constitution expressly provides for a right to privacy.  Cal. Const. Art. I, § 1.

94.     Google's terms of use for all times relevant to this matter provided that Users' PPI would not be exposed to third parties without express consent.

95.     Absent their express consent, Plaintiffs and other Class members used Google+ under the impression that PPI was safeguarded and would not be provided to or stolen by third parties.

96.     Plaintiffs and other Class members had an interest in the protection and non-dissemination of the PPI that Google electronically stored, including the right not to have that PPI stolen and used for profit.

97.     Absent the express consent of Google+ Users, Defendants intentionally intruded on Plaintiffs' and other Class members' private life, seclusion, and solitude, protected under the California constitution as well as common law.

98.     Defendants' wrongful conduct constitutes breach of the social norms underpinning the constitutionally-protected right to privacy.

99.     Defendants' wrongful conduct harmed Plaintiffs and other Class members.

100.    As a direct and proximate result of Defendants 'wrongful conduct, Plaintiff and other Class members have suffered injury and are entitled to appropriate relief, including injunctive relief and damages.

CLASS ACTION COMPLAINT

**Sixth Claim for Relief**
**Deceit by Concealment (Cal. Civil Code §§ 1709, 1710)**

101.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

102.    As alleged above, Defendants knew its data security measures were grossly inadequate by, at the absolute latest, March 2018. At that time, Defendants were on notice of the software glitch in Google+ that gave outside developers potential access to private Google+ profile data between 2015 and March 2018 – facts that Defendants should have already known given its previous exposures and security problems.

103.    In response to all of these facts, Defendants chose to do nothing to protect Plaintiffs and the Class or warn them about the security problems. Instead, Defendants chose to conceal the breach in order to avoid public backlash Congressional inquiry.

104.    Defendants had an obligation to disclose to all class members that their Google accounts and PII were potentially compromised by the data breach.

105.    Defendants did not do this. Instead, Defendants willfully deceived Plaintiffs and the Class by concealing the true facts concerning its poor data security, which Defendants were obligated to, and had a duty to, disclose.

106.    Had Defendants disclosed the true facts about its poor data security, Plaintiffs and the Class would have taken measures to protect themselves. Plaintiffs and the Class justifiably relied on Defendants to provide accurate and complete information about Defendants' data security, which Defendants failed to do.

107.    Independent of any representations made by Defendants, Plaintiffs and the Class justifiably relied on Defendants to provide a service with at least minimally adequate security measures and to disclose facts undermining that reliance.

108.    Rather than disclosing to Plaintiffs and the Class that its services were compromised by the breach and that PII was improperly exposed, Defendants continued on, concealing information relating to the inadequacy of its security measures.

CLASS ACTION COMPLAINT

109.    These actions are "deceit" under Cal. Civil Code § 1710 in that they are the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

110.    As a result of this deceit by Defendants, they are liable under Cal. Civil Code § 1709 for "any damage which [Plaintiffs and the Class] thereby suffer[]."

111.    As a result of this deceit by Defendants, the PII of Plaintiffs and the Class were compromised, and their PII was disclosed to third parties without their consent. Plaintiffs and the other Class members also suffered diminution in value of their PII. Plaintiffs and the Class have also suffered consequential out-of-pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

112.    Defendants' deceit as alleged herein is fraud under Civil Code § 3294(c)(3) in that it was a deceit or concealment of a material fact known to the Defendants conducted with the intent on the part of Defendants of depriving Plaintiffs and the Class of "legal rights or otherwise causing injury." As a result, Plaintiffs and the Class are entitled to punitive damages against Defendant under Civil Code § 3294(a).

<u>**Seventh Claim for Relief**</u>
**Breach of Implied Contract**

113.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

114.    Google solicited and invited Plaintiffs and Class Members to use its Google+ service. Plaintiffs and Class members accepted Google's offers and created user accounts requiring the provision of PII with Google during the period of the data breach.

115.    When Plaintiffs and Class Members used Google+, they provided their PII. In so doing, Plaintiffs and Class Members entered into implied contracts with Google pursuant to which Google agreed to safeguard and protect such information.

116.    Each use of a Google service or product made by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Google under which Google agreed to safeguard and protect Plaintiffs and Class Members' PII.

CLASS ACTION COMPLAINT

117.    Plaintiffs and Class Members would not have provided and entrusted their PII to Google in the absence of the implied contract between them and Google.

118.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Google.

119.    Google breached the implied contracts it made with Plaintiffs and Class Members by failing to safeguard and protect the PII of Plaintiffs and Class.

120.    As a direct and proximate result of Google's breaches of the implied contracts between Google and Plaintiffs and Class Members, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

### ADDITIONAL CLAIMS ON BEHALF OF THE COLORADO SUB-CLASS ONLY
#### Eighth Claim for Relief
#### Violation of Colorado Consumer Protection Act
#### (Colo. Rev. Stat 6-1-101, *et seq.*)

121.    Plaintiffs Olson and Pinkowski ("Colorado Plaintiffs") hereby repeats, realleges and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

122.    Colorado Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Colorado Sub-Class who are all Colorado residents.

123.    Defendants are a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).    Colorado Plaintiffs and Colorado Subclass Members are actual or potential consumers of the products and services offered by the Defendants.

124.    Defendants operating in Colorado, engaged in deceptive, unfair, and unlawful trade acts or practices in the course of its business, vocation or occupation, in violation of Colo. Rev. Stat. § 6-1-105, including but not limited to the following:

a.    Knowingly misrepresenting and fraudulently advertising material facts pertaining to its products and services to the Colorado Subclass by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard Colorado Subclass Members' Personal Information from unauthorized disclosure,

release, data breaches, and theft, in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

b.     Knowingly misrepresenting material facts pertaining to its products and services to the Colorado Subclass by representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Colorado Subclass Members' Personal Information, in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

c.     Knowingly omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Colorado Subclass Members' Personal Information (intending to induce others to enter into a transaction), in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

d.     Engaging in deceptive, unfair, and unlawful trade acts or practices, in violation of Colo. Rev. Stat. § 6-1-105(3), by failing to maintain the privacy and security of Colorado Subclass Members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, including Colo. Rev. Stat. § 6-1-713.5, resulting in the Data Breach;

e.     Engaging in deceptive, unfair, and unlawful trade acts or practices, in violation of Colo. Rev. Stat.§ 6-1-105(3), by failing to disclose the Breach to Colorado Subclass Members in a timely and accurate manner, contrary to the duties imposed by Colo. Rev. Stat. § 6-1-716(2); and

f.     Engaging in deceptive, unfair, and unlawful trade acts or practices, in violation of Colo. Rev. Stat. § 6-1-105(3), by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Colorado Subclass Members' Personal Information from further unauthorized disclosure, release, data breaches, and theft.

125.   Under Colo. Rev. Stat. § 6-1-713.5, Defendants "maintains, owns, or licenses personal identifying information of an individual residing in [Colorado]," and thus is required to "implement and

maintain reasonable security procedures and practices that are appropriate to the nature of the personal identifying information and the nature and size of the business and its operations." Defendants failed to maintain reasonable securities procedures and practices appropriate for the nature and size of the business and its operation.

126.     Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Personal Information.

127.     Defendants intended to mislead Colorado Plaintiffs and Colorado Subclass members and induce them to rely on its misrepresentations and omissions.

128.     Had Colorado Plaintiffs and other Class Members known that Defendant failed to employ necessary and adequate protection of their personal information; they would not have created a Google+ account or limited the PII shared with Defendants.

129.     Defendants engaged in the above unfair and deceptive acts or practices in the course of its business.

130.     Defendants engaged in above unfair and deceptive acts or practices with malice and/or willfulness.

131.     As a direct and proximate result of Defendants unfair and deceptive practices, Colorado Subclass Members suffered injuries to legally protected interests, including their legally protected interest in the confidentiality and privacy of their personal information.

132.     The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiff and Colorado Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

133.     Defendants knew or should have known that its computer systems and data security practices were inadequate to safeguard Colorado Subclass Members' Personal Information and that risk of a data breach or theft was high. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Colorado Subclass.

CLASS ACTION COMPLAINT

134.     Colorado Plaintiffs and Colorado Subclass Members seek relief under Colo. Rev. Stat. §§ 6-1-101, et seq., including, but not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

<u>**Ninth Claim for Relief**</u>
**Violation of Colorado Security Breach Notification Act**
**(Colo. Rev. Stat 6-1-716, et seq.)**

135.     Colorado Plaintiffs hereby repeats, realleges and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

136.     Colorado Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Colorado Sub-Class who are all Colorado residents.

137.     Defendants is a business that owns or licenses computerized data that includes Personal Information as defined by Colo. Rev. Stat. §§ 6-1-716(1) and 6 1-716(2).

138.     Colorado Plaintiffs and Colorado Subclass's PPI includes Personal Information as covered by Colo. Rev. Stat. §§ 6-1-716(1) and 6-1-716(2).

139.     Under Colo. Rev. Stat. § 6-1-713.5, Defendants "maintains, owns, or licenses personal identifying information of an individual residing in [Colorado]," and thus is required to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal identifying information and the nature and size of the business and its operations."

140.     Defendant is required to accurately notify Colorado Plaintiffs and Colorado Subclass if it becomes aware of a breach of its data security system in the most expedient time possible and without unreasonable delay under Colo. Rev. Stat. § 6-1-716(2).

141.     Because Defendants was aware of a breach of its security system, it had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Colo. Rev Stat. § 6-1-716(2).

142.     As a direct and proximate result of Defendants' violations of Colo. Rev. Stat. § 6-1-716(2), Colorado Plaintiffs and Colorado Subclass members suffered damages, as described above.

143.     Colorado Plaintiffs and Colorado Subclass members seek relief under Colo. Rev. Stat. § 6-1-716(4), including actual damages and equitable relief.

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class and Sub-Class members, respectfully request that this Court enter an Order:

a.  Certifying the United States Class and the Colorado Sub-Class, and appointing Plaintiffs as Class and Sub-Class Representatives;

b.  Finding that Defendant's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

c.  Enjoining Defendant from engaging in further negligent, deceptive, unfair, and unlawful business practices alleged herein;

d.  Awarding Plaintiffs and Class and Sub-Class members actual, compensatory, and consequential damages;

e.  Awarding Plaintiffs and Class and Sub-Class members statutory damages and penalties, as allowed by law;

f.  Awarding Plaintiffs and Class and Sub-Class members restitution and disgorgement;

g.  Requiring Defendant to provide appropriate credit monitoring services to Plaintiffs and the other Class and Sub-Class members;

h.  Awarding Plaintiffs and Class and Sub-Class members punitive damages;

i.  Awarding Plaintiffs and Class and Sub-Class members pre-judgment and post-judgment interest;

j.  Awarding Plaintiffs and Class and Sub-Class members reasonable attorneys' fees costs and expenses, and;

k.  Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

CLASS ACTION COMPLAINT

1

DATED:  October 17, 2018

Respectfully submitted,

2

3

*/s/ Ivy T. Ngo*

Ivy T. Ngo (249860)

4

Franklin D. Azar & Associates, P.C.

14426 E. Evans Avenue

5

Aurora, CO  80014

6

Telephone: 303-757-3300

Facsimile:  720-213-5131

7

Email:      ngoi@fdazar.com

*Counsel for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT